A. J. POWELL et ux., Respondents, v. BROOKFIELD PRESSED BRICK AND TILE MANUFACTURING COMPANY, Appellant.

Kansas City Court of Appeals, February 1, 1904.

1. APPELLATE AND TRIAL PRACTICE: Pleading: Amendment: Aider by Answer. A petition against a brick manufacturing company for destroying plaintiff's crop by gases from its kilns, alleged that the defendant's work was negligently done. After the evidence was in the plaintiff amended by striking out the negligence, and the defendant answered and the trial went on and the case was submitted on the amended pleadings. Held, that the change of the cause of action, if any, was waived by the answer, and the appellate court can not consider such objection.

2. NUISANCES: Pleadings: Damages. In an action to recover damages for a nuisance it is unnecessary to aver that the acts were unlawfully done. The cause of action is the wrong suffered, and the facts producing the wrong are the facts to be pleaded, and the amended petition is held to meet the requirements of the rule.

3. ———: Damages: Gases. The test of a nuisance is not the damage simply, but damage resulting from the violation of the legal right of another; and the stealthy attack of an unseen element poisoning the air is a violation of right as much as an open assault.

4. ——: ——: ——: **Corporations.** An incorporated brick manufacturing company has no license to create a nuisance, and the burning of brick is not in itself a nuisance, though a nuisance in itself may be carried on in a proper place where it produces no injury.

Appeal from Linn Circuit Court.—*Hon. John P. Butler,* Judge.

Affirmed.

*Lander & Lander* for appellant.

(1)  Defendant corporation was legally authorized and licensed to establish its brick plant, and to manufacture, burn and sell brick; the plant is established on the company's own ground.   The trial court overlooked or disregarded the well defined legal distinction between acts done under authority, permission or license of the law, and acts done by one not so authorized.   Bishop's non-contract law presents the doctrine as follows, section 425:  "If a statute or a municipal by-law, valid in law, authorizes a thing to be done, it is not a nuisance, though of a sort which would be such but for the authorization." Supported in note 6, by the following authorities: Miller v. New York, 109 U. S. 385; Sawyer v. Davis, 136 Mass. 239; Railway v. Truman, 11 Mo. App. 45; Lewis v. Stein, 16 Ala. 214; Atty.-Gen. v. New York, etc., 9 C. E. Green 49; Danville, etc., Red. v. Commonwealth, 23 Smith (Pa.) 29; Cogswell v. Railroad, 4 Cent. 229.  (2)  The amended petition on which the case was finally tried charges no negligence or carelessness on the part of the defendant company.   The evidence fails to show any negligence, carelessness, fault, wrongdoing or want of skill, care or caution on the part of the company, in the construction, use and operation of its brick kilns; the trial court so found when the case was taken from the jury.   This record presents a clear case of *dammum absque injuria* and nothing else.   (The literal transla-

tion, "Damage without injury," is a little contradictory; the better meaning is injury without wrong.) Penn. Coal Co. v. Sanderson, 113 Pa. St. 126; Howland v. Vincent, 10 Met. (Mass.) 371; People v. Canal Board, 2 N. Y. Sup. Ct. 275; Thurston v. Hancock, 12 Mass. 220; Benton v. Holland, 18 John. (N. Y. ) 92; Palmer v. Mulligan, Cai. Rep. (N. Y.) 308; Rosce v. Buchanan, 51 N. Y. 477; Menken v. City Atlanta (Ga.), 2 S. E. 559. Missouri cases on the same doctrine as follows: Colier v. Ray, 48 Mo. App. 398; Mining Co. v. Morning Star Co., 50 Mo. App. 535; Miller v. Martin, 16 Mo. 508; Clark's Admr., v. Railroad, 36 Mo. 203; Abbott v. Railway, 83 Mo. 271; Jones v. Railway, 84 Mo. 151; Moss v. Railway, 85 Mo. 81.

*A. A. Bailey* for respondents.

(1) "A legislative authority to carry on the work of operating a brick kiln is not a defense to an action for a nuisance created in carrying on the work." State ex rel. v. Board of Health, 16 Mo. App. 8, 59 Mo. App. 59; 16 Am. and Eng. Ency. of Law (1 Ed.), 949; Campbell v. Seaman, 20 Am. 567 (63 N. Y. 568). (2) "A corporation may be liable in damages for a nuisance." 4 Am. and Eng. Ency. of Law (1 Ed.), 258; Railroad v. Fifth Baptist Church, 108 U. S. 317. "It is now well-settled law that a corporation is equally responsible as an individual for the wrongs it commits." Alexander v. Relfe, 74 Mo. 495; Soulard v. St. Louis, 36 Mo. 546.

SMITH, P. J.—The plaintiffs were the owners of a tract of land abutting against the right of way of the Hannibal & St. Joseph Railroad on the north and on which there was an inclosed cultivated field in which plaintiff had planted and growing a crop of corn. On the south side of the said railway and opposite to the land of plaintiff the defendant—a manufacturing com-

pany organized under article 9, chapter 12, Revised
Statutes—owned a tract on which at a distance seventy-
five feet south of said railroad's right of way it con-
structed and operated brick kilns for the burning of
brick. The petition *inter alia* alleged:

"Plaintiffs further say that the defendant ever
since April, 1902, until the present time, has kept and
maintained a large number of fires and furnaces burn-
ing in its said brick kilns and drying houses, and that
said fires and furnaces have constantly and contin-
uously, both day and night, produced, generated and
emitted large quantities of smoke, noisome and noxious
vapors and sulphurous fumes, poisonous to vegetation.
And plaintiffs say that the defendant has during all
said time (carelessly and negligently), and unlawfully
permitted said smoke, vapors and fumes to escape from
its said fires and furnaces, and has (carelessly, neg-
ligently) and unlawfully, permitted said smoke, fumes
and vapors to escape close to the surface of the earth,
and has (negligently, carelessly) and unlawfully failed
and refused to build chimneys or smoke stacks to carry
the same up into the air high enough to pass away with-
out injuring plaintiffs' said crop, and has (carelessly,
negligently) and unlawfully, during all of said time, fed
its said fires and furnaces with soft or bituminous coal
as fuel, which coal was highly charged with sulphur, sul-
phurous compounds and black jack, and which coal pro-
duced and generated when burned, smoke and vapors
and fumes most poisonous and deadly to vegetation, all
of which was well known to defendant, its officers, agents
and servants. And that the defendant constructed its
said furnaces in and about its said brick kilns and dry-
ing houses in such a (careless, reckless and improper)
manner that the same did not properly consume the coal
fed to them as fuel, but caused and permitted large
quantities of said coal to smolder and generate large
quantities of poisonous smoke and fumes that would not
have been generated provided said furnaces had been

properly constructed and had smokestacks connected therewith sufficiently high to cause the said furnaces to draw; and that the defendant by and through itself, its officers, agents and servants, during all of said time, fired, fed and maintained its said fires and furnaces in such a (reckless and careless) manner with the coal aforesaid that the said fires and furnaces were constantly kept clogged and overcharged with the said coal, and that by reason thereof the said fires and furnaces could not and did not draw properly, which caused said fuel to smolder and generate and emit large quantities of such smoke, vapors and fumes which escaped from the mouths of furnaces and was not sufficiently heated and rarified to raise above the surface of the ground. That by reason of the premises aforesaid the said poisoned and noxious smoke and vapors and poisonous and sulphurous fumes so caused, generated and produced by the defendant as aforesaid, did from time to time and for days at a time, during the entire growing season of vegetation of the present year, drift and pass over and enter into and spread and diffuse themselves over and upon, into, through and about plaintiffs' said corn so growing as aforesaid on the said land owned and occupied by plaintiffs as aforesaid, and plaintiffs' said cornfield and the air over, through and about the corn growing in said field was thereby greatly filled and impregnated with said smoke, vapors and fumes, and the said smoke, vapors and fues so caused, generated, produced and permitted to escape by the defendant as aforesaid, and so passing and drifting into and among plaintiffs' said growing crop of corn as aforesaid, did kill, injure, poison and destroy all the corn and corn plants so growing on ten acres of the land so owned and occupied by plaintiffs as aforesaid, so that plaintiffs' said corn crop on said ten acres of land is wholly worthless."

There was a trial and at the conclusion of the evidence the defendant requested the court to tell the jury,

that under the issues made by the pleading the plaintiff was not entitled to recover, unless it was found by the jury that the injury to the plaintiffs' growing corn was caused by the negligent manner in which defendant's brick kilns were constructed and used; and thereupon the plaintiffs requested and the court granted them leave to amend their petition by striking therefrom wherever they occurred the words "carelessly and negligently." The defendant filed its motion to strike out the amendment on the ground that it constituted a departure from the original cause of action. This motion was by the court overruled. By agreement of parties the jury was discharged and the cause was submitted on the evidence to the court without instructions and whose finding and judgment was for plaintiffs, and defendant appealed.

Whether the amendment changed substantially the claim set forth in the original petition is a question which we need not stop to examine for the reason that it appears that after the motion to strike out was overruled defendant filed an answer and the case was tried on the issue joined. It appears from the record that the cause was submitted to the court on the amended petition and answer. It is thus seen that there was an answer interposed to the amendment and on the issue so joined the cause was tried. This amounted to a waiver of the defendant's right to have the ruling on the motion to dismiss reviewed by us. Scovill v. Glasner, 79 Mo. 449; Pickering v. Tel. Co., 47 Mo. 457; Sauter v. Leveridge, 103 Mo. 1. c. 621; West v. McMullen, 112 Mo. 1. c. 409; Holt v. Cannon, 114 Mo. 1. c. 519; Leise v. Meyer, 143 Mo. 1. c. 556.

In the original petition both the construction of the brick manufacturing plant and the manner in which it was operated was characterized as negligent and careless. In the amendment this characterization was omitted and the allegations thereof in other respects were unchanged. It was not necessary to charge the

acts, of which the plaintiffs complain, were unlawfully done. It was only required to allege in substance facts which the law would say were unlawful or wrongful. As to whether or not the acts complained of constituted a nuisance and were therefore unlawful or wrongful was a question of law to be determined by the court. The cause of action is the wrong that has been suffered and the facts that show the wrong show the cause of action; they are the facts to be found; and upon principle they are the facts to be stated by the pleader. Thomas v. Cannery Co., 68 Mo. App. 350; Bliss on Code Plead., sec. 151. The facts stated in the amendment we think are sufficient to meet the requirements of the rule; and, if proved, were ample to entitle the plaintiff to a recovery.

An actionable nuisance is anything wrongfully done or permitted which injures another in the enjoyment of his legal rights. Paddock v. Somes, 102 Mo. 1. c. 237; Cooley on Torts (2 Ed.), 670; Railway Co. v. Case, 38 Ohio St. 453. The test of nuisance is not injury and damage simply, but injury and damages resulting from the violation of the legal right of another. If there is no nuisance, there is no action however much of injury and damage may ensue, but if a right is violated there is an actionable nuisance even though no actual damage results therefrom. Woods, Law of Nuisances (2 Ed.), 1015, and cases cited. The right of one to be secure against the undermining of his buildings by water, or the destruction of his crop, or the poisoning of the air by the stealthy attacks of an unseen element, is as complete as his right to be protected against open personal assaults or the more demonstrative, but not more destructive, trespass of animals. Cooley on Torts (2 Ed.), 670.

The defendant was an incorporated manufacturing company and was authorized by its charter—article 9, chapter 12, Revised Statutes — to make, manufacture and burn brick near the corporate limits of Brookfield,

and to do this it was necessary to erect and maintain its several brick kilns, etc. Brick kilns have been held not to be nuisances *per se*. State v. Board of Health, 16 Mo. App. l. c. 12; Kirchraber v. Lloyd, 59 Mo. App. l. c. 62. A nuisance is not the necessary result of burning brick; and where a nuisance is not the necessary result of the work authorized, legislative authority to create a nuisance will not be inferred from any license or authority to carry on the work, and legislative authority merely to carry on the work will not be a valid defense to a public prosecution *or to a private action for a nuisance created in carrying it on.* What was not contemplated in a grant is not authorized by it. Thus, legislative authority to construct a canal or to dam a stream will not protect the grantee or licensee from nuisances created by the stagnancy of the water occasioned thereby. Clark v. Mayer, 13 Barb. 32; People v. Gas Light Co., 64 Barb. 55; Reg. v. Bradford, 6 B. & S. 631. Even what is a nuisance *per se* may be carried on in a remote locality so as to be no common annoyance to the public. And, on the other hand, what is not a nuisance *per se,* such as a trade as has been harmlessly and beneficially carried on for years in a particular locality, may become a public nuisance without any change in the way in which it is conducted by reason of public streets laid out near it, or by numerous dwellings erected in its vicinity, so as to become a serious annoyance. The business of burning brick is a lawful and necessary business and the question as to whether it is a nuisance or not is to be determined largely by the surroundings of the brick kiln. It is thus seen that the authority conferred by the defendant's charter to construct and operate a brick manufacturing plant is not a valid defense to a private action like this for a nuisance created in carrying it on. The license granted to defendant to construct and operate a brick manufacturing plant did not carry with it the right to so operate it as to become a nuisance to adjacent or neighboring landed properties.

In Campbell v. Seaman, 63 N. Y. 568, it was held that where one manufacturing brick upon his land used a process in burning by which noxious gases were generated which were borne by the winds upon the adjacent lands of his neighbor, injuring and destroying trees and vegetation, was a nuisance, and that the injured party might maintain an action to recover damages therefor. In the course of a very able and elaborate opinion in the case by Justice Earl it was said that, "it is a general rule that every person may exercise exclusive dominion over his property and subject it to such uses as will best subserve his private interests. Generally, no other person can say how he shall use, or what he shall do with his property. But his general right of property has exceptions and qualifications. *Sic utere tuo, ut alienum non laedas,* is an old maxim which has a broad application. It does not mean that one must never use his own so as to do any injury to his neighbor or his property. . . . But every person is bound to make a reasonable use of his property so as to occasion no unnecessary damage or annoyance to his neighbor. If he makes an unreasonable, unwarrantable or unlawful use of it so as to produce material annoyance, inconvenience, discomfort or hurt to his neighbor, he will be guilty of nuisance to his neighbor. . . . As to what is a reasonable use of one's property can not be defined by any certain general rules, but must depend upon the circumstances of each case. A use of property in one locality and under some circumstances may be lawful and reasonable which, under other circumstances, would be unlawful, unreasonable and a nuisance. To constitute a nuisance, the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable or inconvenient."

In Beadman v. Treadwell (31 Law Jour. N. S. 873), an injunction was granted restraining the burning of brick within 650 yards of plaintiff's dwelling, the court holding that the burning of brick within 350 yards of plaintiff's residence was a nuisance. The vice chancellor said that his mind was satisfied that there had been an actual, positive injury to plaintiff and that the comfort and enjoyment of his mansion house were injured; that the trees planted and standing and growing for ornament had been in some cases entirely destroyed, and in many cases injured. When Bradford v. Turly (31 Law. Jour. N. S. Q. B. 286), reached the Exchequer Chamber it was there held that it was no answer for a nuisance creating an actual annoyance and discomfort in the enjoyment of neighboring property that the injury resulted from a reasonable use of the property and that the act was done in a convenient place and that the same business had been carried on in the same locality for seventeen years.

Many other cases of similar import might be cited. It is sufficient to say that within the rules thus referred to it can not be doubted that the defendant's brick burning was a nuisance to plaintiff. The defendant's plant was about 200 feet from the plaintiff's field of corn. The smoke and gases escaping from the defendant's brick kilns indisputably destroyed plaintiff's growing crop of corn. And it is no answer for the nuisance that the injury resulted from a reasonable use of the defendant's brick manufacturing plant or that the defendant's brick kilns were built after the most approved patterns, and that it employed skilled persons in burning the brick, for the fact remains undisputed that the smoke, gases and vapors escaping from the defendant's brick kilns settled upon and destroyed the plaintiff's crops and thus greatly injured him in the enjoyment of his property. Though the defendant was an incorporated company—an artificial entity—we can discover nothing in its charter that conferred upon it in respect

to the operation of its plant any greater privilege or right than that of a natural person. There is nothing there that expressly or by implication gave it the right to so operate its plant as to render it a nuisance as to plaintiffs. It is clear to us from the evidence that in the operation of the defendant's plant the principles of the maxim *sic utere,* etc., already quoted, have been utterly disregarded. Nor do we think the use in *damnum absque injuria*—one where there is a loss for which the law provides no remedy.

We think the judgment ought to be affirmed, and it is accordingly so ordered. All concur.