## THURMOND, Appellant, v. ASH GROVE WHITE LIME ASSOCIATION, Respondent.

### St. Louis Court of Appeals, May 14, 1907.

1. **BLASTING: Trespass: Possession.** The owner of a farm which was not in his own possession, but in the possession of his son could not recover damages to the premises caused by the blasting and hurling rocks upon the premises such as to amount to a trespass; but if the falling rocks injured the freehold, he might recover for such damage to the freehold, though he was not in possession.

2. ———: ———: **Nuisance: Negligence.** Where injury is caused to premises by blasting, in a thinly settled community, and the injury does not amount to a trespass and is not continuous so as to constitute a nuisance, it is necessary to show that the blasting was negligently done, in an action to recover for the injury caused.

3. ———: ———: ———: ———: **Violent Explosions.** In an action for damages to the plaintiff's freehold caused by blasting on adjacent property, where there was no evidence as to improper loading and firing of the blasts, but it was shown that the blasts were of unusual violence, such as to knock the plastering from the walls of plaintiff's house and crack the cement in his cistern, and where the evidence showed that the blasting was carried on for months before and after such occurrences without such results, this was sufficient evidence from which the jury might infer negligence in the work.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

REVERSED AND REMANDED.

*Wright Bros. & Blair* and *L. H. Musgrave* for appellant.

In directing the jury to find no more than nominal damages, in any event, the court erred. For it was the jury's business to fix the amount of the damage, and not the court's. Berlin v. Thompson, 61 Mo. App. 243; Spencer v. Railway, 120 Mo. 159. It was error to in-

struct against a recovery for the injuries to the house and cistern. Quarry Co. v. Hay, 2 N. Y. 162; Quarry Company v. Tremain, 2 N. Y. 163; St. Peter v. Denison, 58 N. Y. 421; Morgan v. Bowen, 62 Hun 623, 17 N. Y. Supp. 23. . Again, it "has been held that working quarries by the use of gunpowder to the injury of property in the vicinity, gives a right of action." Booth v. Railway, 140 N. Y. 267, 35 N. E. 596; Tiffin v. McCormack, 34 Ohio St. 638; Scott v. Bray, 3 Md. 431. Under the circumstances, even if proof of negligence was required, that question should have gone to the jury on the evidence. Ulrich v. McDonald, 1 Hilt. (N. Y.) 251; Newell v. Woolfolk, 91 Hun 211, 36 N. Y. Supp. 327; Klepsch v. McDonald. (4 Wash.), 30 Pac. 993.

*A. H. Wear, J. T. Hayden* and *Wm. H. Horine* for respondent.

GOODE, J.—This appeal was taken from a judgment given for defendant in an action to recover for injuries to plaintiff's farm, and the house, cistern and fencing thereon, alleged to have been caused by blasting in defendant's quarry. The petition avers that on a day not stated in 1905, "defendant, by its agents and servants placed in the rock in its aforesaid quarries, quantities of explosives and discharged the same, and wrongfully and recklessly and negligently by shaking the earth thereby and by the shocks and concussions by said explosions and discharges produced, defendant shook and cracked the plastering in plaintiff's said house and thereby rendered the same useless and unsightly, to the plaintiff's great damage; and also by the same acts and like ones, defendant shook and cracked the cement on the walls of plaintiff's said cistern and thereby decreased the capacity of said cistern and greatly injured said cistern thereby, greatly to plaintiff's damage; and defendant by its agents and servants by the use of explosives in said quarries and by blasting, threw and caused

to be thrown quantities of rock and stone upon plaintiff's said farm, thereby injuring plaintiff's said farm and breaking plaintiff's fences, all to the damage of plaintiff in the sum of $250." Plaintiff owned the farm and improvements but had for several years lived in the town of Ash Grove, having rented the farm to his son who was in possession and resided in the house. Prior to the incidents complained of plaintiff had leased a part of his land to defendant for a quarry, and later had sold the leased tract for the same purpose. If the injurious blasting was not done on the land defendant had bought from plaintiff it was done in a quarry which covered a portion of said land. This quarry was between a quarter and an eighth of a mile from the farmhouse and was opened in October, 1904. Blasting in it was carried on without damaging the farm or improvements until the next spring. The particular explosions alleged to have been harmful, occurred, plaintiff's son swore, on the first three days in May, while defendant was blasting for a track (a railway or tram track, we suppose) at the north end of the new quarry. Afterwards blasting was again carried on with no bad results. Witnesses swore that at the time stated "there was some unusually heavy shooting;" that plaintiff's house was jarred and the windows caused to rattle, some plastering shaken from the walls and ceilings of the rooms and the cement cracked in the cistern. The son's wife swore that one night an explosion awakened her from sleep and the next morning she saw plastering on the floor. Rocks were thrown on plaintiff's farm and on the fence between plaintiff's land and defendant's quarry. This was a wire fence and the wires were bent down in several places, but no witness undertook to estimate the cost of repair, and probably it was too insignificant to be estimated. Approximate proof was made of the damage to the house and cistern. In instructing the jury the court limited the verdict for plaintiff to one for nominal dam-

ages and this was allowed only in the event the jury found rocks were thrown on plaintiff's premises to his injury. Damages for injury to the house and cistern were refused. A verdict was returned for defendant.

It is contended by plaintiff's counsel that the court erred in requiring the jury to find rocks were thrown on plaintiff's farm to his injury, in order to find a verdict in his favor. We understand counsel to mean that hurling rocks on the premises was a trespass and whether injury was done or not, plaintiff was entitled to nominal damages. Had he been in possession of the farm, likely this proposition would be sound without regard to whether the blasting was carefully done. [Hays v. Cohoes Co., 2 N. Y. 159; Tremaine v. Id., 2 N. Y. 162.] But plaintiff's son was in possession and therefore plaintiff had no right to recover for a bare entry. It was not proved the falling rocks injured the farm except by bending the wires of the fences in two or three places and as said, there was no evidence as to the extent of the loss thus occasioned. For an injury to the freehold or inheritance, plaintiff might recover even though his son was in possession. [Parker v. Shackelford, 61 Mo. 86; Arnold v. Benett, 92 Mo. App. 156.] Hence if substantial harm had been done to the farm by falling rocks, we might hold the instruction for nominal damages was erroneous. But as no harm was proved, plaintiff was not entitled even to a nominal verdict on that score.

On a proper pleading, supported by relevant evidence, plaintiff was entitled to recover for damage to the house and cistern caused by concussions. The legal problem in this connection is whether or not his right to recover for this damage, depended on his proving negligence in the blasting or was made out by merely showing the freehold was injured. It has been said the law on this subject is not well settled. [12 Am. & Eng. Ency. Law (2 Ed.), 508.] Two doctrines of the law approach so closely at this point that it has been found difficult

to enforce one without impugning the other. One of these doctrines is that the use of his land by the owner in a lawful business and without trespass or negligence does not lay him liable for casual injury to another as a result of the use. [Penn Coal Co. v. Sanderson, 11 Pa. St. 126; Smith v. Fenwick, 7 C. B. 515.] The other doctrine is that a man must enjoy his own property in such a manner as not to injure the property of others or otherwise invade their rights. The question has been discussed in many cases involving the liability of defendants under various circumstances; and, of course, the influence of the different decisions as precedents, hinges on the similarity of their respective facts to those of the case under advisement. Sometimes the injuries sued for were connected with a trespass, as when stones or inflammable material were hurled on adjacent property; and in such instances the defendants were usually held liable without regard to care or carelessness in doing the work. [Hays v. Cohoes Co., Tremaine v. Id., supra; St. Peter v. Denison, 58 N. Y. 417; Sullivan v. Dunham, 161 N. Y. 290; 47 L. R. A. 715; Tiffin v. M'Cormack, 34 Oh. St. 638; Scott v. Ray, 3 M'd. 431.] But occasionally when the facts were as stated, liability has been made to turn on negligence. [Gates v. Latta, 117 N. C. 189; Murphy v. Lowell, 128 Mass. 396; Cary v. Morrison, 129 Fed. 177, 65 L. R. A. 659.] In other instances judgments went against defendants on the theory that the hurtful explosions or substances stored on the premises of the various defendants were inherently dangerous considering their nature and surroundings; therefore evidence of negligence. It appeared usually that the explosions were in a densely inhabited district, or that an explosive of needless violence was used when some less dangerous means was available for the work. [Bradford Co. v. St. Marys Co., 60 Oh. St. 560; Colton v. Onderdonk, 69 Cal. 155; Fitzsimons, etc., Co. v. Braun, 199 Ill. 390; Chicago v. Murdock, 212 Ill. 9; 1

Thompson, Comm. Law Neg., sec. 764.] Defendants have been exonerated when the damage was due to concussion or vibration and there was no fact to be looked to as proof of negligence except the damage. [Cisney v. Sewer Pipe Co., 199 Penn. St. 519.] Our study of the opinions on this topic has yielded the belief that when trepass or continuous injury is absent, liability for injury due to an explosion occurring in the conduct of a business, depends on negligence, and that most courts expressly or impliedly proceed on this theory; though they differ occasionally as to what is sufficient proof of negligence and dispose of the case in a manner which disguises the fact that negligence is regarded as essential to a recovery. In the present case the quarry was in a thinly peopled rural neighborhood where defendant had been taking out rock for years by blasting, which is the customary and perhaps the essential means of doing the work. We should hesitate to hold even under such circumstances, that blasting could be carried on if it was a permanent nuisance, when properly conducted. Influence is allowed to the period through which the annoyance incident to useful and lawful work extends, in determining whether or not it shall be regarded as a nuisance. Things essential to the prosecution of an industry are tolerated when temporarily injurious or annoying to persons or property in the vicinity, which would be unlawful and a nuisance if the injury was protracted. Booth v. Railroad, supra. If casual inconvenience is caused by the conduct of a business with due care and without trespassing, it is regarded as *damnum absque injuria;* but this rule might be of dubious application if positive loss was inflicted on another who had in no way assented to the work. There is discord in the tone of the opinions dealing with the topic, as will be observed in reading, say the Fitzsimons case in the Illinois Reports, and the Booth case in the 140th New York. If we look to the facts of the case in hand we find the

alleged damage was wrought by isolated incidents, oc-
curring during a few days, in a locality of scattered
population and where defendant's quarry had been ope-
rated for years. We find further that plaintiff had as-
sented to the work, properly conducted, by leasing and
selling land to defendant for quarry uses, where the
blasting complained of occurred; and ordinarily no
harm resulted to his estate from the blasting. In view
of these circumstances we hold defendant's liability de-
pended on proof of negligence in the work. If this rul-
ing is correct, it was essential to charge and prove that
the concussions alleged to have injured the house and
cistern, were due to a want of ordinary care in doing
the blasting. [Booth v. Railroad, supra; Marvin v. Iron
Co., 55 N. Y. 557; Cary v. Morrison, 129 Fed. 177;
Klepsch v. Donald, 30 Pac. 991.] We infer that the
court below found negligence was not sufficiently
charged, or else that the charge was unsupported by
evidence, and, therefore, instructed against a verdict for
injury to the house and cistern. The statement filed with
the justice of the peace before whom the case originated,
suggests that the pleader intended to set up two distinct
causes of action; one for damage to plaintiff's house and
cistern due to defendant's negligence, and the other
for damage to the farm and fences by hurling rocks on
them; that is, for a trespass. If the action had been
brought in a court of record, where the rules of pleading
are more rigorous than before justices, the sufficiency
of the charge of negligence would be very doubtful, be-
cause the acts alleged to have been done by defendant,
namely, placing quantities of explosives in the rock and
discharging the same, are not said to have been negli-
gently done. Negligence is applied to the consequences
of the acts; that is, to the shaking and concussions
which followed the explosions. In pleading negligence
it is essential either to state acts which in themselves
import negligence, or to characterize them as having

been negligently performed. But the manifest intention of the pleader in this case was to prefer a charge of negligence, and we think the statement was sufficient after verdict, particularly as no point was made against it in the court below. [Van Cleave v. St. Louis, 159 Mo. 574, 60 S. W. 1091.] No witnesses swore to the improper loading and firing of the blasts, either in using too much powder or otherwise. But it was in evidence that the jarring and detonations were of unusual violence and caused unusual consequences, knocking some plastering from the walls of plaintiff's house and cracking the cement in his cistern. Mrs. Thurmond swore:

"The next evening after it shocked me so and woke me up I was out in the yard when the blast was so large, and I saw rock fall just everywhere, and it made a terrible report and you could hear the rocks fall and I could hear the doors and windows rattle."

Ernest Thurmond swore the blasts scattered rock over ten or twelve acres of land and that there were two or three wagon loads of it. We have, besides, the fact that blasting was carried on for months before and after without causing such results. This evidence makes it unnecessary to say whether or not the doctrine of *res ipsa loquitur* could be applied on the bare facts of the blasting and injury; but see Thompson, Comm. on Neg., sec. 764. The jury might reasonably infer from the testimony for plaintiff that the explosions which did the harm were carelessly managed.

The judgment is reversed and the cause remanded. All concur.